UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDREA MARIE COBB,

    Plaintiff,

v.                                                  CASE NO. 6:22-cv-2393-JBT

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## MEMORANDUM ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits. In a decision dated May 13, 2022, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability within the meaning of the Social Security Act from June 2, 2016, the alleged disability onset date, through December 31, 2017, the date last insured. (Tr. 15–28.) Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

### I. Issues on Appeal

Plaintiff makes two arguments on appeal:

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 14 & 16.)

> I. The ALJ failed to apply the correct legal standards to Dr. Newton's opinion.
>
> II. The ALJ failed to apply the correct legal standards to [Plaintiff's] testimony regarding her migraine headaches and resulting limitations.

(Doc. 18 at 4, 12.)

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III. Analysis

### A. Dr. Newton's Opinions

Plaintiff's first argument centers around the ALJ's rejection of the opinions of a treating physician, Dr. Herbert Newton, documented in his responses to a Headaches Residual Functional Capacity Questionnaire (Tr. 621–22). Plaintiff argues that Dr. Newton's opinions demonstrate that the severity of Plaintiff's impairments or combination of impairments meets or is equivalent to a step three

2

listed impairment and/or the severity of her symptoms support a finding of complete disability at steps four and five of the sequential evaluation process. (Doc. 18 at 7–12.)  The ALJ summarized Dr. Newton's opinions as follows:

> Dr. Newton completed a headaches residual functional capacity questionnaire on June 12, 2018.  The claimant's diagnosis was WHO grade 2 astrocytoma and migraines.  He opined that the claimant's headaches were severe behind the right eye and right sided frontal region.  The claimant had associated vertigo, nausea, photosensitive, mood changes, mental confusion, inability to concentrate, fatigue and memory loss.  The claimant had about 20 headaches a month, 4 days were severe and could last all day to four days long.  Her headaches were worse with bright lights, moving around and noise.  Her headaches were better by lying in a dark room, cold/hot packs and Imitrex injections.  The objective signs of claimant's headaches were tenderness, impaired sleep and impaired appetite or gastritis.  Dr. Newton indicated that the Sumatriptan injections caused terrible exhaustion, gastroparesis, constipation and dizziness.  The claimant would require unscheduled breaks of 2 to 4 times per day and may not be able to return to work after resting because her headaches were not resolved.  Dr. Newton opined the claimant was incapable of even "low stress" jobs.  The claimant would be absent from work more than four times per month.  She needed to avoid temperature extremes, dust, fumes and gases.  Due to triggers for migraines, she cannot be exposed to loud noises or bright lights as well as excessive movement.  Dr. Newton felt that a regular and sustained work basis was not possible.  (Exhibit C8F).

(Tr. 22.)

20 C.F.R. § 404.1520c states in part:

> For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply. . . .

3

> (a) *How we consider medical opinions and prior administrative medical findings.* We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . .

20 C.F.R. § 404.1520c(a).

Plaintiff's application was filed on June 5, 2018. Consequently, the ALJ was not required to give more weight to the opinions of any of Plaintiff's treating physicians. (Tr. 225–33.) For such claims, the regulations require the ALJ to undertake and articulate an analysis of the persuasiveness of each medical opinion using a five-factor approach. 20 C.F.R. § 404.1520c. The ALJ need not explain every factor, but she must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be.
>
> (2) Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.

20 C.F.R. § 404.1520c(c).

In this case, the ALJ's reasoning is supported by substantial evidence. The ALJ reasonably concluded that Dr. Newton's opinions were inconsistent with and unsupported by the objective medical evidence and the record as a whole,

4

including other physicians' treating records, other opinion evidence, and Dr. Newton's own treatment records. (Tr. 24.)

In finding Dr. Newton's opinions unpersuasive, the ALJ stated:

> While Dr. Newton opined that the claimant would be absent over 4 days per month due to her symptoms, treatment notes report various frequency and duration of migraines and generally do not support incapacitation during these periods. For example, in August 2016, the claimant had not started preventative medication, Topamax, and reported one to two migraines per month (C9F/20-21). In May 2017, when Dr. Newton referred the claimant to a migraine specialist (Dr. Slansky), he noted eight migraines per month and advised the claimant to return for regular follow up in August 2017, unless her symptoms did not improve (Exhibit C9F/5). The record reflects the claimant's next treatment visit was September 2017, at which time objective examination findings were normal; she was taking 25 mg Topamax daily and Dr. Newton increased this to 25 mg twice daily for headache prevention (Exhibit C10F/28-30). The claimant then sought treatment with Dr. Slansky in October 2017, at which time she reported four to five severe headaches per month, lasting up to four days, with photophobia, nausea, vomiting, and phonophobia, for which she took Motrin and sumatriptan injectable (Ex. C3F/19). At her next visit with Dr. Newton, in January 2018, the claimant was off Topomax, using no preventative medication (Ex. C10F/19). The claimant reported "a few moments" of nausea and vomiting in August 2016, but denied light sensitivity, balance issues, falls or other neurological symptoms (Ex. C9F/21). In August 2017, she was having "intermittent" migraines with more nausea and vomiting but no double vision, vision loss, or loss of sensation (Ex. C9F/7). Although there is mention that the claimant had loss of short term memory and slowed processing, consistent with the RFC limitations, examinations consistently note that the claimant was alert, oriented, in no acute distress, cooperative, with functional cognition intact and appropriate mood and affect (Exhibit C9F/2, 9, 16, 23).

5

> Moreover, Dr. Newton indicated that the claimant's condition was stable (Exhibit C9F/5, 11, 19, 24). She did not require emergent or urgent care for migraines. Objective findings and treatment notes fail to support more than moderate functional limitations, nor do treatment notes document incapacitating symptoms and limitations to support regular absences, off task time, or the environmental limitations opined (C3F, C6F, C9F, C10F).

(Tr. 24.) The ALJ's view of the evidence is reasonable, and therefore supported by substantial evidence. Thus, the Court finds no error in the ALJ's discount of Dr. Newton's opinions.

### B. Plaintiff's Testimony

Next, Plaintiff argues that the ALJ erred in discounting her testimony. (Doc. 18 at 12–15.) "If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ 'must articulate explicit and adequate reasons for doing so.'" *McMahon v. Comm'r of Soc. Sec.*, 583 F. App'x 886, 893 (11th Cir. 2014) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).[2] "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

"SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements about subjective symptoms like pain. The new ruling eliminated the use of the term "'credibility' . . . [and] explains

---

[2] The undersigned does not rely on unpublished opinions as binding precedent. However, they may be cited when persuasive on a particular point. *See McNamara v. GEICO,* 30 F.4th 1055, 1060–61 (11th Cir. 2022).

6

that adjudicators will consider whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'" *Hargress v. Comm'r of Soc. Sec.,* 883 F.3d 1302, 1308 (11th Cir. 2018) (citations omitted).

The ALJ summarized Plaintiff's testimony regarding the severity of her symptoms in part as follows:

> Prior to December 2017, she was having migraines a few times a month which was on her whole right side of her head. She could not open her right eye. She had injections for her headache after that and her headaches let up. Her headaches in 2017 were about 5 days a week. She was unable to do anything. She would shower to help her head or take a hot bath. . . . In 2016 and 2017, she was not able to remember details or focus. She would forget things her husband would say. . . . She gets injections in her neck and skull that help a little but do not last. She started Botox in 2018. Her memory has gotten worse. The pain makes it hard to focus. Forgetting stuff is frustrating.

(Tr. 20.)

The ALJ's reasoning pertaining to why she discounted Dr. Newton's opinions is equally applicable to Plaintiff's testimony. In short, the ALJ reasonably viewed Plaintiff's testimony as inconsistent with the objective medical evidence and other evidence of record. For example, the ALJ reasoned:

> Though the claimant alleges severe headaches, there are no emergency room visits or urgent care visits. She had sought appropriate treatment, but the record reflects regular and somewhat infrequent neurological follow up. She stopped prescribed/recommended medications at times without record of the claimant coming in early for additional treatment or substitute medications,

7

>suggesting her symptoms were not as severe as allege[d]. (Ex. C9F, C10F). For [p]rior to the date last insured, the claimant began Botox therapy and it was noted in March 2018, after the date last insured, that she had a 50% reduction in migraine frequency with this treatment (Exhibit C3F/6). The record reflects a long history of headaches and brain tumor with remote resection in 2001, relatively stable on brain imaging since, with the claimant working for years after her brain surgery (Exhibit C7D, C9F, C10F).

(Tr. 24–25.) The foregoing are adequate reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

## IV. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED** that:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on June 2, 2023.

*Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record